1  EILEEN M. DECKER
   United States Attorney
2  LAWRENCE S. MIDDLETON
   Assistant United States Attorney
3  Chief, Criminal Division
   STEVEN M. ARKOW (Cal. Bar No. 143755)
4  Assistant United States Attorney
   Major Frauds Section
5       1100 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone:  (213) 894-6975
7       Facsimile:  (213) 894-6269
        E-mail:     steven.arkow@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10                 UNITED STATES DISTRICT COURT

11             FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,          No. CR 14-512-SJO

13              Plaintiff,             PLEA AGREEMENT FOR DEFENDANT
                                       PRISCILLA VILLABROZA
14              v.

15  PRISCILLA VILLABROZA,

16              Defendant.

17

18       1.    This constitutes the plea agreement between PRISCILLA

19  VILLABROZA ("defendant") and the United States Attorney's Office for

20  the Central District of California ("the USAO") in the above-

21  captioned case.  This agreement is limited to the USAO and cannot

22  bind any other federal, state, local, or foreign prosecuting,

23  enforcement, administrative, or regulatory authorities.

24                      DEFENDANT'S OBLIGATIONS

25       2.    Defendant agrees to:

26            a.    At the earliest opportunity requested by the USAO and

27  provided by the Court, appear and plead guilty to count thirteen of

28  the indictment in United States v. Priscilla Villabroza, CR 14-512-

SJO, which count charges defendant with health care fraud, in violation of Title 18, United States Code, Section 1347.

b.    Not contest facts agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.    Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

h.    Not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

<u>THE USAO'S OBLIGATIONS</u>

3.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may

consider any dismissed charges in determining the applicable
Sentencing Guidelines range, the propriety and extent of any
departure from that range, and the sentence to be imposed.

      d.   At the time of sentencing, provided that defendant
demonstrates an acceptance of responsibility for the offenses up to
and including the time of sentencing, recommend a two-level reduction
in the applicable Sentencing Guidelines offense level, pursuant to
U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
additional one-level reduction if available under that section.

NATURE OF THE OFFENSE

    4.   Defendant understands that for defendant to be guilty of
the crime charged in count thirteen, that is, health care fraud, in
violation of Title 18, United States Code, Section 1347, the
following must be true:

    (1) Defendant knowingly and willfully executed, or attempted to
execute, a scheme or plan to defraud a health care benefit program,
or a scheme or plan for obtaining money or property from a health
care benefit program by means of false or fraudulent pretenses,
representations, or promises;

    (2) Statements made or facts omitted as part of the scheme were
material, that is, they had a natural tendency to influence, or were
capable of influencing, the health care benefit program to part with
money or property;

    (3) Defendant acted with the intent to defraud, that is, the
intent to deceive or cheat; and

    (4) The scheme involved the delivery of or payment for health
care benefits, items, or services.

3

1    The word "willfully" means that defendant committed the act
2    voluntarily and purposely, and with knowledge that her conduct was,
3    in a general sense, unlawful.  That is, defendant must have acted
4    with a bad purpose to disobey or disregard the law.  The government
5    need not prove that the defendant was aware of the specific provision
6    of the law that she is charged with violating or any other specific
7    provision.

8    The term "health care benefit program" means any public or
9    private plan or contract, affecting commerce, under which any medical
10   benefit, item, or service is provided to any individual, and includes
11   any individual or entity who is providing a medical benefit, item, or
12   service for which payment may be made under the plan or contract.
13   For purposes of this case, it includes the Medicare and Medi-Cal
14   programs.

15                        PENALTIES AND RESTITUTION

16   5.    Defendant understands that the statutory maximum sentence
17   that the Court can impose for a violation of Title 18, United States
18   Code, Section 1347, is: 10 years imprisonment; a three-year period of
19   supervised release; a fine of $250,000 or twice the gross gain or
20   gross loss resulting from the offense, whichever is greatest; and a
21   mandatory special assessment of $100.

22   6.    Defendant understands that defendant will be required to
23   pay full restitution to the victims of the offenses to which
24   defendant is pleading guilty.  Defendant agrees that, in return for
25   the USAO's compliance with its obligations under this agreement, the
26   Court may order restitution to persons other than the victims of the
27   offense to which defendant is pleading guilty and in an amount
28   greater than the amount alleged in the count to which defendant is

                                    4

1   pleading guilty.   In particular, defendant agrees that the Court may
2   order restitution to any victim for any losses suffered by that
3   victim as a result of: (a) any relevant conduct, as defined in
4   U.S.S.G. § 1B1.3, in connection with the offenses to which defendant
5   is pleading guilty; and (b) any dismissed counts pursuant to this
6   agreement as well as all relevant conduct, as defined in U.S.S.G.
7   § 1B1.3, in connection with those counts and charges.   The parties
8   currently believe that the applicable amount of restitution owed to
9   the Medicare and Medi-Cal programs is approximately $5,464,568 and
10  $1,968,761, respectively, but recognize and agree that this amount
11  could change based on facts that come to the attention of the parties
12  prior to sentencing.

13       7.   Defendant understands that supervised release is a period
14  of time following imprisonment during which defendant will be subject
15  to various restrictions and requirements.   Defendant understands that
16  if defendant violates one or more of the conditions of any supervised
17  release imposed, defendant may be returned to prison for all or part
18  of the term of supervised release authorized by statute for the
19  offense that resulted in the term of supervised release, which could
20  result in defendant serving a total term of imprisonment greater than
21  the statutory maximum stated above.

22       8.   Defendant understands that, by pleading guilty, defendant
23  may be giving up valuable government benefits and valuable civic
24  rights, such as the right to vote, the right to possess a firearm,
25  the right to hold office, and the right to serve on a jury.
26  Defendant understands that once the court accepts defendant's guilty
27  plea, it will be a federal felony for defendant to possess a firearm
28  or ammunition.   Defendant understands that the conviction in this

1  case may also subject defendant to various other collateral

2  consequences, including but not limited to revocation of probation,

3  parole, or supervised release in another case, suspension or

4  revocation of a professional license, and mandatory exclusion from

5  federal health care benefit programs for a minimum of five years.

6  Defendant understands that unanticipated collateral consequences will

7  not serve as grounds to withdraw defendant's guilty plea.

8      9.   Defendant understands that, if defendant is not a United

9  States citizen, the felony conviction in this case may subject

10  defendant to: removal, also known as deportation, which may, under

11  some circumstances, be mandatory; denial of citizenship; and denial

12  of admission to the United States in the future.  The court cannot,

13  and defendant's attorney also may not be able to, advise defendant

14  fully regarding the immigration consequences of the felony conviction

15  in this case.  Defendant understands that unexpected immigration

16  consequences will not serve as grounds to withdraw defendant's guilty

17  plea.

18                          FACTUAL BASIS

19      10.  Defendant admits that defendant is, in fact, guilty of the

20  offense to which defendant is agreeing to plead guilty.  Defendant

21  and the USAO agree to the statement of facts provided below and agree

22  that this statement of facts is sufficient to support a plea of

23  guilty to the charge described in this agreement and to establish the

24  Sentencing Guidelines factors set forth in paragraph 12 below but is

25  not meant to be a complete recitation of all facts relevant to the

26  underlying criminal conduct or all facts known to either party that

27  relate to that conduct.

28  //

Background

At all times relevant to this plea agreement, the Medicare and Medi-Cal programs were health care benefit programs as defined by 18 U.S.C. § 24(b).  Individuals receiving Medicare or Medi-Cal benefits were known as beneficiaries.

To qualify for reimbursement for hospice services, Medicare and Medi-Cal required a physician to certify that a beneficiary was terminally ill.  Medicare and Medi-Cal considered a beneficiary to be "terminally ill" if the beneficiary's life expectancy was six months or less if the illness ran its normal course.  Hospice services reimbursed by Medicare and Medi-Cal were palliative in nature and included, but were not limited to, medications to manage pain symptoms, necessary medical equipment, and bereavement services to surviving family members.

Medicare covered hospice services for those beneficiaries who were eligible for Medicare Part A (hospital-related services).  When a Medicare beneficiary elected hospice coverage, the beneficiary waived all rights to Medicare Part B (covering outpatient physician services and procedures) coverage of services to treat or reverse the beneficiary's terminal illness while the beneficiary was on hospice.

The Scheme to Defraud

Beginning in or about November 2007, and continuing through in or about June 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant and other co-schemers, including defendant's daughter, Sharon Patrow, also known as "Sharon Garcia," ("Patrow"), Sri Wijegoonaratna, M.D. ("Wijegoonaratna"), Boyao Huang ("Huang"), M.D., Nancy Briones, R.N. ("Briones"), and Roseilyn Montana ("Montana") knowingly, willfully,

and with intent to defraud, executed a scheme (a) to defraud health care benefit programs, namely, Medicare and Medi-Cal, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from Medicare and Medi-Cal by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

The fraudulent scheme operated, in substance, in the following manner:

<u>Efforts to Conceal Co-Schemer Defendant's Interest in California Hospice</u>

On or about August 15, 2007, federal agents conducted a search of Medcare Plus Home Health Providers, Inc. ("Medcare Plus"), a home health agency owned and operated by defendant.  Thereafter, defendant learned that she was under investigation for health care fraud and the payment of illegal kickbacks in exchange for the referral of beneficiaries to Medcare Plus.

On or about November 29, 2007, defendant purchased and financed the purchase of California Hospice LLP ("California Hospice") for approximately $300,000.  To conceal her ownership interest in California Hospice, defendant designated co-schemers Patrow and Erwin Castillo ("Castillo"), employed as the director of nursing of California Hospice, as the co-owners of California Hospice on documents filed with the State of California, Medicare, Medi-Cal, and the Internal Revenue Service.  Defendant submitted an application with Medicare to transfer California Hospice's provider number following the sale.

1    Defendant and Patrow owned and operated California Hospice.

2  Defendant and Patrow were the only signatories on, and jointly

3  controlled, California Hospice's bank account at Wells Fargo Bank

4  ending in 1910 (the "Wells Fargo Account"), which defendant and

5  Patrow opened on or about January 28, 2008.

6    On or about May 13, 2008, defendant and Patrow submitted a

7  Medicare provider application for California Hospice.  Patrow signed

8  the application under penalty of perjury, which defendant knew at the

9  time contained a false statement because defendant's ownership

10  interest in California Hospice was not disclosed to Medicare as

11  required by the application.

12    On August 19, 2008, defendant pled guilty to participating in a

13  scheme to defraud Medi-Cal operated out of Medcare Plus, in violation

14  of 18 U.S.C. section 1347, in United States v. Villabroza, Case No.

15  CR 08-782-GAF (Central District of California).

16    On or about April 16, 2009, Patrow, at defendant's direction,

17  submitted a provider application to Medi-Cal, which Patrow signed

18  under penalty of perjury, falsely certifying that no owner, officer,

19  director, employee or agent of California Hospice had been convicted

20  of an offense involving fraud on a government program within the

21  previous 10 years.  As defendant then well knew, the certification

22  was false because defendant was an owner, employee, and agent of

23  California Hospice and had been convicted of health care fraud in

24  Case No. 08-782-GAF.  As a result of concealing defendant's interest

25  in California Hospice in this manner, defendant and others furthered

26  the scheme to engage in health care fraud, because if defendant's

27  true interest in California Hospice had been disclosed, California

28  Hospice would not have received a Medi-Cal provider number and would

1  not have been able to bill Medi-Cal fraudulently for health care

2  services.

3       Between in or about July 2009 and in or about July 2011,

4  defendant wrote checks from the Wells Fargo Account to other bank

5  accounts that defendant controlled under the names of other purported

6  health care companies that defendant owned and operated, including

7  Medcare Plus, Unicare Health Professional ("Unicare"), Excel Plus

8  Home Health Services, Inc., ("Excel Plus") a purported nursing

9  registry, and Nevada Home Health Providers, Inc., a purported home

10  health agency, using funds obtained from Medicare and Medi-Cal for

11  purportedly providing hospice-related services to beneficiaries.

12  These checks were frequently recorded in California Hospice's books

13  and records as "Loans to/from Owners."

14       On or about July 24, 2011, in connection with defendant's

15  sentencing in Case No. CR 08-782-GAF, and in furtherance of the

16  scheme to defraud, defendant submitted a letter to the United States

17  District Court signed by Patrow falsely stating that defendant "has

18  no ownership interest, nor exercises any influence or control over

19  California Hospice Care, LLC" and that "Villabroza has never had

20  ownership of California Hospice Care, LLC."  As defendant then well

21  knew at the time Patrow's letter was submitted to the Court on

22  defendant's behalf, this statement was false because defendant was an

23  owner of California Hospice and controlled the Wells Fargo Account.

24  While defendant was serving her sentence in Case No. CR 08-782-GAF,

25  defendant continued to manage the operations of California Hospice,

26  including through directions given during meetings and conversations

27  defendant had with Patrow and Castillo.

28  //

<u>Recruitment of Beneficiaries and Fraudulent Hospice Admissions</u>

California Hospice received few, if any, referrals from the primary care physicians of beneficiaries.  Rather, defendant and Patrow paid patient recruiters, known as "marketers" or "cappers," to recruit Medicare and Medi-Cal beneficiaries to California Hospice. Using the proceeds of the payments received by California Hospice from Medicare and Medi-Cal and deposited into the Wells Fargo Account, defendant and Patrow paid the marketers, including Montana, approximately $400 to $1,000 in illegal kickbacks in exchange for each recruited beneficiary per month the recruited beneficiary purportedly received hospice-related services from California Hospice.  Defendant and Patrow paid marketers in a variety of ways, including by checks drawn on the Wells Fargo Account, the accounts of Unicare, and personal bank accounts, as well as in cash.  For some of the marketers, defendant decided whether to refer the beneficiary to one of defendant's home health care companies and bill Medicare or Medi-Cal for home health care services, or to refer the beneficiary to California Hospice and bill Medicare or Medi-Cal for hospice related services.  As defendant and other co-schemers then well knew, the recruited beneficiaries were not terminally ill and did not need hospice services.

Defendant referred to marketers as "business liaisons," "community liaisons," and "business development representatives" to disguise the illegal nature of their illegal kickback relationship with their marketers.  Defendant also paid medical professionals, including Wijegoonratna, illegal kickbacks for referring beneficiaries to California Hospice so the beneficiaries would be admitted to hospice.

1    Defendant knew that Wijegoonaratna, Huang, and other physicians
2    paid by California Hospice created fraudulent diagnoses and falsely
3    certified that beneficiaries were terminally ill, when, as defendant
4    and Patrow then well knew, the overwhelming majority of the recruited
5    California Hospice beneficiaries were not terminally ill.

6    Once a falsely certified beneficiary was admitted to hospice,
7    defendant and Patrow caused California Hospice to fraudulently bill
8    Medicare and Medi-Cal for purportedly providing unnecessary hospice-
9    related services to that beneficiary.

10    On a number of occasions, in response to California Hospice's
11    high volume of claims, a Medicare contractor sent California Hospice
12    Additional Development Requests ("ADRs"), which sought documentation
13    to support claims for hospice-related services.  The ADRs were sent
14    after Medicare had denied claims because it determined that there was
15    insufficient documentation to support findings that the patients were
16    terminally ill.  Thereafter, to support the fraudulent diagnoses of
17    terminal illnesses by Wijegoonaratna and Huang, and to secure payment
18    from Medicare, with defendant's knowledge, co-schemers, including
19    Castillo and quality assurance nurses employed by California Hospice,
20    created and thereafter submitted false and fraudulent medical records
21    for California Hospice patients, including nursing notes they altered
22    in response to ADRs to make it appear that the patients were
23    terminally ill, knowing that the records would be submitted to the
24    Medicare contractor in response to the ADR audits.

25    The False Claim Charged In Count 13

26    On or about December 5, 2012, in furtherance of, and as an
27    execution of, the scheme to defraud Medicare and Medi-Cal, defendant
28    caused the submission of claim number 21234001049407 for $6,582.70 to

12

1  Medicare for the provision of hospice services to beneficiary S.F.

2  In fact, and as defendant then well knew: (a) this claim was false

3  and fraudulent because beneficiary S.F. was not terminally ill; and

4  (b) the submission of this false and fraudulent claim was unlawful.

5  Medicare paid this claim.  Defendant and the USAO agree that the

6  offense in count thirteen to which defendant is pleading guilty

7  involved a loss to the victim, Medicare, of $5,432.57.

8      Relevant Conduct Loss

9      For purposes of sentencing, the intended loss based on relevant

10 conduct was approximately $8,910,702, which is the total amount of

11 the fraudulent claims defendant submitted and caused to be submitted

12 to Medicare and Medi-Cal for medically unnecessary hospice-related

13 services purportedly provided by California Hospice.  Between in or

14 about March 2009 and in or about June 2013, defendant submitted and

15 caused to be submitted false and fraudulent claims to Medicare and

16 Medi-Cal for hospice-related services in the amounts of approximately

17 $6,861,346 and $2,049,356, respectively.  Based on these claims,

18 Medicare and Medi-Cal paid California Hospice approximately

19 $5,464,568 and $1,968,761, respectively.  Payment on these false and

20 fraudulent claims was made electronically to the Wells Fargo Account.

21                          SENTENCING FACTORS

22     11.  Defendant understands that in determining defendant's

23 sentence the Court is required to calculate the applicable Sentencing

24 Guidelines range and to consider that range, possible departures

25 under the Sentencing Guidelines, and the other sentencing factors set

26 forth in 18 U.S.C. § 3553(a).  Defendant understands that the

27 Sentencing Guidelines are advisory only, that defendant cannot have

28 any expectation of receiving a sentence within the calculated

Sentencing Guidelines range, and that after considering the

Sentencing Guidelines and the other § 3553(a) factors, the Court will

be free to exercise its discretion to impose any sentence it finds

appropriate up to the maximum set by statute for the crimes of

conviction.

    12.   Defendant and the USAO agree to the following applicable

Sentencing Guidelines factors for the offense to which defendant is

pleading guilty:

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. § 2B1.1(a)(2)] |
| Loss Amount of $3.5-$9.5 Million: | +18 | [U.S.S.G.§ 2B1.1(b)(1)(J)] |
| Fraud on a Government Health Care Program More Than $7 Million: | +3 | [U.S.S.G. § 2B1.1(b)(7)(ii)] |
| Abuse of Position of Trust: | +2 | [U.S.S.G. § 3B1.3] |
| Obstruction of Justice: | +2 | [U.S.S.G. § 3C1.1] |

Subject to paragraph 24 below, defendant and the USAO agree not to

seek or argue in any way, either orally or in writing, that any other

specific offense characteristics, adjustments, or departures relating

to the offense level be imposed, with the exception that the USAO

reserves the right to argue – and defendant reserves the right to

oppose – that the following additional specific offense

characteristics and adjustments are appropriate: (1) a two-level

upward adjustment for fraud during course of bankruptcy pursuant to

U.S.S.G. § 2B1.1(b)(9)(B); and (2) a four-level upward adjustment for

aggravating role in the offense pursuant to U.S.S.G. § 3B1.1(a). If

the two upward adjustments are applied, the total offense level will

be 34. Defendant agrees, however, that if, after signing this

agreement but prior to sentencing, defendant were to commit an act,

or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

13.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel - and if necessary have the court appoint counsel - at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel - and if necessary have the court appoint counsel - at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

1    f.    The right to testify and to present evidence in

2    opposition to the charges, including the right to compel the

3    attendance of witnesses to testify.

4    g.    The right not to be compelled to testify, and, if

5    defendant chose not to testify or present evidence, to have that

6    choice not be used against defendant.

7    h.    Any and all rights to pursue any affirmative defenses,

8    Fourth Amendment or Fifth Amendment claims, and other pretrial

9    motions that have been filed or could be filed.

10   WAIVER OF APPEAL OF CONVICTION

11   16.  Defendant understands that, with the exception of an appeal

12   based on a claim that defendant's guilty plea was involuntary, by

13   pleading guilty defendant is waiving and giving up any right to

14   appeal defendant's conviction on the offense to which defendant is

15   pleading guilty.

16   LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

17   17.  Defendant agrees that, provided the Court imposes a total

18   term of imprisonment within or below the range corresponding to an

19   offense level of 28 and the criminal history category calculated by

20   the Court, defendant gives up the right to appeal all of the

21   following: (a) the procedures and calculations used to determine and

22   impose any portion of the sentence; (b) the term of imprisonment

23   imposed by the Court; (c) the fine imposed by the court, provided it

24   is within the statutory maximum; (d) the amount and terms of any

25   restitution order, provided it requires payment of no more than

26   $7,433,329; (e) the term of probation or supervised release imposed

27   by the Court, provided it is within the statutory maximum; and

28   (f) any of the following conditions of probation or supervised

1 release imposed by the Court: the conditions set forth in General

2 Orders 318, 01-05, and/or 05-02 of this Court; and the drug testing

3 conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d).

4     18.   The USAO agrees that, provided (a) all portions of the

5 sentence are at or below the statutory maximum specified above and

6 (b) the Court imposes a term of imprisonment corresponding to an

7 offense level of 34 and the criminal history category calculated by

8 the Court, the USAO gives up its right to appeal any portion of the

9 sentence, with the exception that the USAO reserves the right to

10 appeal the amount of restitution ordered if that amount is less than

11 $7,433,329.

12                  RESULT OF WITHDRAWAL OF GUILTY PLEA

13     19.   Defendant agrees that if, after entering a guilty plea

14 pursuant to this agreement, defendant seeks to withdraw and succeeds

15 in withdrawing defendant's guilty plea on any basis other than a

16 claim and finding that entry into this plea agreement was

17 involuntary, then (a) the USAO will be relieved of all of its

18 obligations under this agreement; and (b) should the USAO choose to

19 pursue any charge that was either dismissed or not filed as a result

20 of this agreement, then (i) any applicable statute of limitations

21 will be tolled between the date of defendant's signing of this

22 agreement and the filing commencing any such action; and

23 (ii) defendant waives and gives up all defenses based on the statute

24 of limitations, any claim of pre-indictment delay, or any speedy

25 trial claim with respect to any such action, except to the extent

26 that such defenses existed as of the date of defendant's signing this

27 agreement.

28

EFFECTIVE DATE OF AGREEMENT

20.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

21.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

22.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any

1  speedy trial claim with respect to any such action, except to the

2  extent that such defenses existed as of the date of defendant's

3  signing this agreement.

4          c.   Defendant agrees that: (i) any statements made by

5  defendant, under oath, at the guilty plea hearing (if such a hearing

6  occurred prior to the breach); (ii) the agreed to factual basis

7  statement in this agreement; and (iii) any evidence derived from such

8  statements, shall be admissible against defendant in any such action

9  against defendant, and defendant waives and gives up any claim under

10  the United States Constitution, any statute, Rule 410 of the Federal

11  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

12  Procedure, or any other federal rule, that the statements or any

13  evidence derived from the statements should be suppressed or are

14  inadmissible.

15                    COURT AND PROBATION OFFICE NOT PARTIES

16      23.  Defendant understands that the Court and the United States

17  Probation Office are not parties to this agreement and need not

18  accept any of the USAO's sentencing recommendations or the parties'

19  agreements to facts or sentencing factors.

20      24.  Defendant understands that both defendant and the USAO are

21  free to: (a) supplement the facts by supplying relevant information

22  to the United States Probation Office and the Court, (b) correct any

23  and all factual misstatements relating to the Court's Sentencing

24  Guidelines calculations and determination of sentence, and (c) argue

25  on appeal and collateral review that the Court's Sentencing

26  Guidelines calculations and the sentence it chooses to impose are not

27  error, although each party agrees to maintain its view that the

28  calculations in paragraph 12 are consistent with the facts of this

1   case.  While this paragraph permits both the USAO and defendant to

2   submit full and complete factual information to the United States

3   Probation Office and the Court, even if that factual information may

4   be viewed as inconsistent with the facts agreed to in this agreement,

5   this paragraph does not affect defendant's and the USAO's obligations

6   not to contest the facts agreed to in this agreement.

7        25.  Defendant understands that even if the Court ignores any

8   sentencing recommendation, finds facts or reaches conclusions

9   different from those agreed to, and/or imposes any sentence up to the

10  maximum established by statute, defendant cannot, for that reason,

11  withdraw defendant's guilty plea, and defendant will remain bound to

12  fulfill all defendant's obligations under this agreement.  Defendant

13  understands that no one -- not the prosecutor, defendant's attorney,

14  or the Court -- can make a binding prediction or promise regarding

15  the sentence defendant will receive, except that it will be within

16  the statutory maximum.

17                      NO ADDITIONAL AGREEMENTS

18       26.  Defendant understands that, except as set forth herein,

19  there are no promises, understandings, or agreements between the USAO

20  and defendant or defendant's attorney, and that no additional

21  promise, understanding, or agreement may be entered into unless in a

22  writing signed by all parties or on the record in court.

23  //

24

25

26

27

28

1    PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2        27.   The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
7    CALIFORNIA

8    EILEEN M. DECKER
     United States Attorney

9

10   _____          December 11, 2015
     STEVEN M. ARKOW                    _____
11   Assistant United States Attorney   Date

12   _____          12-1-15
     PRISCILLA VILLABROZA               _____
13   Defendant                          Date

14   _____          12/1/15
15   I/ MARK BLEDSTEIN                  _____
     Attorney for Defendant            Date
16   PRISCILLA VILLABROZA

17

18              CERTIFICATION OF DEFENDANT

19        I have read this agreement in its entirety.  I have had enough

20   time to review and consider this agreement, and I have carefully and

21   thoroughly discussed every part of it with my attorney.  I understand

22   the terms of this agreement, and I voluntarily agree to those terms.

23   I have discussed the evidence with my attorney, and my attorney has

24   advised me of my rights, of possible pretrial motions that might be

25   filed, of possible defenses that might be asserted either prior to or

26   at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

27   of relevant Sentencing Guidelines provisions, and of the consequences

28   of entering into this agreement.  No promises, inducements, or

     representations of any kind have been made to me other than those

                              21

1  contained in this agreement.  No one has threatened or forced me in
2  any way to enter into this agreement.  I am satisfied with the
3  representation of my attorney in this matter, and I am pleading
4  guilty because I am guilty of the charge and wish to take advantage
5  of the promises set forth in this agreement, and not for any other
6  reason.

7  _____        12/1/2015
8  PRISCILLA VILLABROZA                      Date
   Defendant
9

10              CERTIFICATION OF DEFENDANT'S ATTORNEY

11      I am PRISCILLA VILLABROA's attorney.  I have carefully and
12  thoroughly discussed every part of this agreement with my client.
13  Further, I have fully advised my client of his rights, of possible
14  pretrial motions that might be filed, of possible defenses that might
15  be asserted either prior to or at trial, of the sentencing factors
16  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
17  provisions, and of the consequences of entering into this agreement.
18  To my knowledge: no promises, inducements, or representations of any
19  kind have been made to my client other than those contained in this
20  agreement; no one has threatened or forced my client in any way to
21  enter into this agreement; my client's decision to enter into this
22  agreement is an informed and voluntary one; and the factual basis set
23  forth in this agreement is sufficient to support my client's entry of
24  a guilty plea pursuant to this agreement.

25  _____        12-1-2015
26  I. MARK BLEDSTEIN                         Date
    Attorney for Defendant
27  PRISCILLA VILLABROZA

28

                            22